16-4225-cv
*Ali v. Kipp*

# In the

# United States Court of Appeals

## for the Second Circuit

AUGUST TERM 2017
No. 16-4225-cv

IMRAN ALI,
*Plaintiff-Appellant,*

*v.*

NYC POLICE OFFICER DONALD KIPP,
*Defendant-Appellee.*[*]

On Appeal from the United States District Court
for the Eastern District of New York

ARGUED: DECEMBER 5, 2017
DECIDED: MAY 22, 2018

Before: CABRANES, LIVINGSTON, and CARNEY, *Circuit Judges.*

---

[*] The Clerk of Court is directed to amend the caption as indicated above.

Plaintiff-appellant Imran Ali ("Ali") brought this action in the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*) under 42 U.S.C. § 1983, alleging that defendant-appellee New York Police Sergeant Donald Kipp ("Sergeant Kipp" or "Kipp") used excessive force against him. At trial, Ali claimed that, while he was in custody following his arrest, Sergeant Kipp slammed his head into the bars and wall of a holding cell, causing two lacerations: one on the top of his head requiring staples, and another on his forehead requiring stitches. Sergeant Kipp denied the allegations of excessive force, and maintained that Ali's injuries were self-inflicted.

The jury found that Sergeant Kipp used excessive force against Ali, and that Kipp's use of excessive force proximately caused injury to Ali. It nevertheless awarded no compensatory damages.

Ali moved for a new trial, arguing that the jury's findings of excessive force and proximate causation were inconsistent with the decision not to award compensatory damages. He contended that if the jury found that Sergeant Kipp used excessive force, as he alleged, it must have also accepted his theory of how he injured his head.

The District Court disagreed and determined that the verdict could be harmonized. It thus denied the motion.

This case raises two questions:

(1) Whether the District Court "abused its discretion" when it denied Ali's Federal Rule of Civil Procedure 59(a) motion for a new trial because it determined that the jury's verdict could be harmonized and therefore that Ali was not entitled to compensatory damages as a matter of law; and

(2) Whether a court, when attempting to harmonize a seemingly inconsistent verdict, is limited to the specific theories of the case presented by the parties.

We answer both questions in the negative and therefore **AFFIRM** the judgment of the District Court.

————

STEVEN J. HARFENIST, Harfenist Kraut & Perlstein, LLP, Lake Success, NY, *for Plaintiff-Appellant*.

AMANDA SUE NICHOLS (Richard Dearing, Claude S. Platton, *on the brief)*, *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendant-Appellee*.

————

3

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff-appellant Imran Ali ("Ali") brought this action in the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*) under 42 U.S.C. § 1983, alleging that defendant-appellee New York Police Sergeant Donald Kipp ("Sergeant Kipp" or "Kipp") used excessive force against him. At trial, Ali claimed that, while he was in custody following his arrest, Sergeant Kipp slammed his head into the bars and wall of a holding cell, causing two lacerations: one on the top of his head requiring staples, and another on his forehead requiring stitches. Sergeant Kipp denied the allegations of excessive force, and maintained that Ali's injuries were self-inflicted.

The jury found that Sergeant Kipp used excessive force against Ali, and that Kipp's use of excessive force proximately caused injury to Ali. It nevertheless awarded no compensatory damages.

Ali moved for a new trial, arguing that the findings of excessive force and proximate causation were inconsistent with the jury's decision not to award compensatory damages. He contended that if the jury found that Sergeant Kipp used excessive force, as he alleged, it must have also accepted his theory of how he injured his head.

The District Court disagreed and determined that the verdict could be harmonized. It thus denied the motion.

4

This case raises two questions:

(1) Whether the District Court "abused its discretion" when it denied Ali's Federal Rule of Civil Procedure 59(a) motion for a new trial because it determined that the jury's verdict could be harmonized and therefore that Ali was not entitled to compensatory damages as a matter of law; and

(2) Whether a court, when attempting to harmonize a seemingly inconsistent verdict, is limited to the specific theories of the case presented by the parties.

We answer both questions in the negative and therefore **AFFIRM** the judgment of the District Court.

## I.    BACKGROUND

This case arises out of Ali's arrest on the morning of July 17, 2009. The parties agree that Ali's interaction with the police began when officers found Ali in a crashed vehicle, alone and under the influence of alcohol.[1] The parties also agree that Ali's interaction with Sergeant Kipp ended at the jail with Ali sustaining two lacerations: one on the top of his head requiring six staples, and another on his forehead requiring stitches.[2] But at trial, Ali and defendant Sergeant

---

[1] *See, e.g.*, App'x at 164–65, 222, 572–75; Appellant's Br. at 6; Appellee's Br. at 4–5.

[2] Appellant's Br. at 9; Appellee's Br. at 10–11.

Kipp offered vastly different accounts of what transpired between those bookends.

### A. Parties' Testimony about the Morning Ali Was Injured

According to Ali's testimony at trial, the morning in question had an unpropitious beginning. After consuming "some shots . . . [and] some beers," he and his friend, Alex Rodriguez, decided to go for a car ride.[3] Rodriguez was the driver, and Ali the passenger. Rodriguez eventually rammed the car into a parked vehicle, and fled the scene on foot. When officers arrived, Ali testified, they refused to accept that he had not been driving. This caused him to become "visibly angry" and start yelling.[4] He was thereafter arrested and transported to the 103rd Police Precinct ("Precinct") in Jamaica, Queens, New York for processing and detention.

Sergeant Kipp was working the front desk of the Precinct when Ali arrived. Ali testified that he renewed his protestations of innocence, but Kipp refused to listen.[5] An argument ensued and, in Ali's account, Kipp declared that he would show Ali what "happen[s] to wiseguys like you."[6]

---

[3] App'x at 222–23. At the time of the accident and at trial, Ali was unable to provide any contact or location information for Alex Rodriguez. *Id.* at 229–31.

[4] *Id.* at 166.

[5] *Id.* at 168–69.

[6] *Id.* at 170.

Ali claimed that Sergeant Kipp then grabbed him by "[his] neck, [his] back, [his] pants, and basically [his] boxers were ripped from the way [Kipp] was lifting [him] up."[7] Sergeant Kipp forced Ali into a holding cell, where he allegedly "start[ed] slamming [Ali's] head into the brick wall a few times," before "proceed[ing] to slam [his] head . . . into the metal bars."[8] This purportedly left Ali bloody and unconscious, and the next thing he could recall he was in an ambulance headed to Jamaica Hospital.[9]

Sergeant Kipp also testified at trial. He denied slamming Ali's head into the cell wall and bars, and maintained that Ali's wounds were instead self-inflicted.

According to Kipp, Ali arrived at the Precinct intoxicated and "yelling and screaming."[10] After unsuccessfully attempting to calm him down, Kipp and another officer searched him for weapons and led him to a holding cell.[11] Sergeant Kipp admitted that, in escorting Ali, he "physically move[d]" him because Ali refused to "walk[ ] on his own."[12] But Sergeant Kipp stated that this physical contact

---

[7] *Id.* at 171.

[8] *Id.* at 171–72.

[9] *Id.* at 174–75.

[10] *Id.* at 346, 355.

[11] *Id.* at 358–61.

[12] *Id.* at 362.

involved little more than "guid[ing]" him toward the cell—not grabbing him by the neck and lifting him by the pants, as Ali had claimed.[13] As for the use of physical force on Ali inside the cell, Kipp said only that he pulled Ali into the cell and "used [Ali's] arm to sit him down."[14]

In Sergeant Kipp's account, Ali sustained his injuries after Kipp had exited the cell. Kipp explained that he locked the cell door, returned to the Precinct's front desk, and observed Ali on a monitor. Ali, still screaming, started climbing on the cell bench. Sergeant Kipp revisited the cell once to sit Ali down, and when he returned to the front desk he heard two "hollow banging sound[s]."[15] He again went back to the holding cell, where, Kipp claimed, he found Ali with his back against the wall and "blood coming from his head."[16]

Kipp testified that he did not see precisely how Ali had injured himself. He also testified that this entire interaction with Ali—from when Ali first entered the Precinct to when he injured his head— lasted approximately two minutes.[17]

---

[13] *Id.* at 362–63.

[14] *Id.* at 371.

[15] *Id.* at 389.

[16] *Id.* at 391–92.

[17] *Id.* at 438.

*B. The Jury Instructions*

At the charging conference, Ali objected to the inclusion of a nominal damages charge because his physical injuries were uncontested.[18] If the jury found that Sergeant Kipp had used excessive force, Ali contended, it would also have to find, as a matter of law, that Kipp caused compensable damages.[19] The District Court agreed, stating that it would be "inconsistent" for the jury to find that Kipp violated Ali's rights, but that he was entitled only to an award of nominal damages, because "we know that there were definitely costs, damages, of more than a dollar."[20] Accordingly, no nominal damages charge was given.

The District Court nevertheless made clear in its jury instructions that the jury could find that (1) Sergeant Kipp used excessive force, and also find that (2) he did not proximately cause Ali's head injuries. Two instructions are particularly relevant here: the excessive force charge and the compensatory damages charge.

On excessive force, the District Court instructed the jury to determine whether "Sergeant Kipp used excessive force on [Ali] when placing him in the precinct holding cell."[21] Recognizing that

---

[18] *Id.* at 634.

[19] *Id.*

[20] *Id.* at 635.

[21] *Id.* at 741.

9

both parties testified that Sergeant Kipp used *some* force on Ali,[22] the District Court gave the jury a lengthy exposition of the distinction between reasonable and excessive force.[23] Sergeant Kipp, the District Court explained, was permitted to "use reasonable force necessary to maintain order and ensure compliance with regulations of the jail."[24] And "[r]easonable force that happens to cause an injury is not excessive force."[25]

On compensatory damages, the District Court expressly instructed the jury that, to award such damages, it had to find that any excessive force used by Sergeant Kipp was the proximate cause of Ali's injuries. The District Court underscored that, even if the jury found that Kipp had used excessive force, some of Ali's injuries could still be attributable to other causes: "you may award compensatory damages *only* for those injuries that you find the plaintiff has proven . . . to have been the result of conduct by the defendant in violation of the law. That is, you may not simply award compensatory damages for *any* injury suffered by the plaintiff from any cause."[26]

---

[22] *Id.* ("Mr. Ali claims that . . . Sergeant Kipp used excessive force on him."); *id.* ("Sergeant Kipp contends that any use of force by him was not excessive but reasonable.").

[23] *Id.* at 741–42.

[24] *Id.*

[25] *Id.* at 742.

[26] *Id.* at 745 (emphases added).

## C. *The Verdict and Ali's Post-Trial Motion*

After approximately four hours of deliberation, the jury returned its verdict. The jury found that Ali had proven that (1) Sergeant Kipp used excessive force on him, and (2) "he suffered an injury or injuries . . . proximately caused by the use of excessive force."[27] The jury, however, awarded Ali "$0" in compensatory damages.[28] The jury also concluded that Ali was not entitled to punitive damages.[29] Neither party objected to the verdict prior to the jury's discharge.

Ali subsequently moved for a new trial under Federal Rule of Civil Procedure 59(a) on the limited issue of damages or, alternatively, a new trial on both damages and liability. The District Court denied the motion, concluding that the jury's findings could be reasonably harmonized. The District Court determined that a reasonable jury could have credited Ali's testimony that Kipp "grabbed him by the neck and pants and dragged him to the holding cell, ripping his boxers in the process, and concluded that the amount of force used was excessive," while rejecting Ali's testimony about Kipp slamming his head into the cell wall and bars.[30] Under that view of the case, the jury could reasonably have found that Kipp used

---

[27] *Id.* at 78.

[28] *Id.*

[29] *Id.* at 79.

[30] Special App'x at 16.

excessive force, but that the excessive force caused Ali *de minimis* injuries.[31]

The District Court, however, determined that Ali was entitled to nominal damages as a matter of law, and awarded him $1.[32] This appeal followed.

## II.    DISCUSSION

The gravamen of Ali's appeal is that the jury's material findings of fact cannot be rationally reconciled with the evidence and theories presented at trial. He argues that if the jury determined that (1) Sergeant Kipp used excessive force *and* (2) the excessive force was the proximate cause of some injury or injuries sustained by Ali, it must also have believed that (3) Sergeant Kipp slammed his head into the cell wall and bars, causing the injuries to his head. And because it is undisputed that those head injuries were serious, Ali contends that he was entitled to more than nominal damages. In Ali's view, the only explanation for the jury's decision not to award substantial damages is that it disapproved of his character.[33]

We disagree. Here, the District Court correctly identified a view of the case that harmonized the jury's findings. Specifically, the jury could have found that Sergeant Kipp used excessive force when

---

[31] *Id.* at 16–17.

[32] *Id.* at 18.

[33] *See, e.g.*, Appellant's Br. at 18, 42, 45.

transporting Ali to the holding cell, that this use of force caused *de minimis* injuries, and that Ali himself later caused his undisputedly serious head injuries.

We further clarify that, in harmonizing a seemingly inconsistent verdict, a court is not limited to the specific theories of the case presented by the parties; it may adopt any reasonable view of the case that is consistent with the facts and testimony adduced at trial.

**A.**

A trial court should not grant a motion for a new trial unless it is "convinced that the jury . . . reached a seriously erroneous result or that the verdict is a miscarriage of justice."[34] We review a district court's denial of a Rule 59 motion for a new trial for abuse of discretion.[35] It is a deferential standard, which reflects district courts' significant—although not limitless—latitude to exercise their inherent discretionary authority. We view the evidence "in the light most favorable to the nonmoving party,"[36] and we will reverse a judgment only if the district court (1) based its decision on an error of

---

[34] *Amato v. City of Saratoga Springs, N.Y.,* 170 F.3d 311, 314 (2d Cir. 1999) (quoting *Atkins v. New York City,* 143 F.3d 100, 102 (2d Cir. 1998)).

[35] *Crawford v. Tribeca Lending Corp.,* 815 F.3d 121, 128 (2d Cir. 2016); *see generally In re Sims,* 534 F.3d 117, 131–32 (2d Cir. 2008) (explaining the term of art "abuse of discretion").

[36] *Atkins,* 143 F.3d at 102.

law, (2) made a clearly erroneous factual finding, or (3) otherwise "rendered a decision that cannot be located within the range of permissible decisions."[37]

A party appealing a district court's denial of a Rule 59 motion because of a seemingly insufficient damages award in light of a liability verdict bears a heavy burden.[38] As Justice Brandeis notably admonished, "[a]ppellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct."[39] Accordingly, when faced with an apparent inconsistency, we "must adopt a view of the case, if there is one, that resolves any seeming inconsistency," making "every attempt to reconcile the jury's findings, by exegesis if necessary."[40] We will order a new trial only if the district court abused

---

[37] *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 146 (2d Cir. 2012) (internal quotation marks omitted).

[38] *See Amato*, 170 F.3d at 314 ("[A]ppellate courts must afford the jury's findings and the district court's decision [not to grant a new trial] great deference.").

[39] *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485 (1933); *see also Stevenson v. Hearst Consol. Publications*, 214 F.2d 902, 911 (2d Cir. 1954); *cf. Jayne v. Mason & Dixon Lines*, 124 F.2d 317, 319 (2d Cir. 1941) (L. Hand, *J.*) ("We do not mean to imply . . . that we should have thought it fatal to the wife's recovery if no rational reconciliation of the verdicts was possible.").

[40] *Turley v. Police Dep't of the City of New York*, 167 F.3d 757, 760 (2d Cir. 1999) (internal quotation marks omitted).

its discretion in deciding that the verdict was not "seriously erroneous or a miscarriage of justice."[41]

**B.**

Because "a jury finding of excessive force does not automatically entitle a claimant to compensatory damages as a matter of law,"[42] we must examine the record to determine whether it is possible to harmonize the jury's verdict. The jury instructions frame our analysis, just as they did the jury's deliberations.

Contrary to Ali's suggestion,[43] the jury instructions did not limit the jury to considering only Sergeant Kipp's conduct inside the holding cell. Rather, they directed the jury to determine whether "Sergeant Kipp used excessive force on [Ali] when *placing him in the precinct holding cell*."[44] As a matter of plain language, this encompassed any force Kipp may have used to bring Ali to the holding cell, and any force he may have used once Ali was inside the cell. The jury therefore was not only entitled, but required, to consider

---

[41] *Amato*, 170 F.3d at 314.

[42] *Id.*; *see also Carey v. Piphus*, 435 U.S. 247, 248 (1978) (holding that Section 1983 plaintiffs were "entitled to recover only nominal damages" "in the absence of proof of actual injury.").

[43] Appellant's Br. at 3.

[44] App'x at 741 (emphasis added).

15

whether Sergeant Kipp used excessive force when bringing Ali from the front desk of the Precinct to the threshold of the cell.

Even if the jury found that Sergeant Kipp used excessive force while placing Ali in the cell, that was not necessarily the end of its fact-finding. Rather, the District Court instructed the jury that, before it could award damages, it also had to find that any excessive force used by Sergeant Kipp was the proximate cause of Ali's "injury or injuries."[45] And in the event that the jury found that only *some* of Ali's injuries were caused by Kipp's use of excessive force, the jury was directed to "award compensatory damages *only* for those injuries that [it] find[s] the plaintiff has proven . . . to have been the result of conduct by the defendant in violation of the law."[46]

In light of these proper and thorough jury instructions, we have no difficulty identifying "a view of the case . . . that resolves any seeming inconsistency."[47] The jury heard two different accounts of what transpired when Sergeant Kipp placed Ali in the cell. According to Ali, the entire incident was marked by violence—from Sergeant Kipp grabbing Ali's neck and ripping Ali's boxers on the way to the cell, to his slamming Ali's head into the cell wall and bars once inside the cell.[48] Sergeant Kipp, on the other hand, testified that all he did

---

[45] *Id.* at 78 (final jury verdict sheet).

[46] *Id.* at 745 (emphasis added).

[47] *Turley*, 167 F.3d at 760 (internal quotation marks omitted).

[48] App'x at 171–72.

was "guide[ ]" an inebriated Ali to the cell, pull him inside, and repeatedly sit him down on a bench—after which, Kipp said, Ali injured himself.[49]

The jury was free to conclude that the truth lay somewhere between these two versions of the relevant events. It could have credited Ali's testimony that Sergeant Kipp used excessive force when he brought Ali to the holding cell, but concluded that Ali suffered only *de minimis* injuries from the treatment. That finding would not have foreclosed the jury from also crediting Kipp's testimony that Ali caused his own head injuries, either by slamming his own head into the wall or by falling off the cell's bench head-first. Under this view of the case, the award of no compensatory damages was proper, for the jury was not to "simply award compensatory damages for any injury suffered by the plaintiff from any cause."[50]

Because the jury's causation finding was ambiguous and might have referred only to the *de minimis* injuries that Ali suffered while being forced into the cell,[51] the District Court cannot be said to have abused its discretion when it denied Ali's Rule 59 motion for a new trial.

---

[49] *Id.* at 362–63, 371.

[50] *Id.* at 745 (jury instructions).

[51] *See, e.g.*, *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) (holding that compensatory damages are not required as a matter of law where the evidence was ambiguous as to the cause of injuries).

## C.

Ali's arguments to the contrary give us little pause. Ali contends that the District Court, in denying his motion, relied on a "new theory" of liability not presented to the jury. According to Ali, he argued to the jury that Sergeant Kipp used excessive force only when he was already in the holding cell. Ali thus claims that the evidence he presented precluded any finding of liability with respect to Sergeant Kipp's conduct in the course of transporting him to the holding cell.

We do not agree. The law is clear that "the jurors were not required to accept the entirety of either side's account, but were free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credited."[52] Not "accept[ing] the entirety of either side's account" necessarily entails not accepting either side's theory of the case whole cloth. We therefore hold that, when harmonizing a seemingly inconsistent verdict, a court similarly is not limited to the specific theories of the case presented by the parties, but may adopt any reasonable view that is consistent with the facts and testimony adduced at trial.

Ali also argues that the District Court erred when it analyzed his motion for a new trial as a challenge to an inconsistent verdict, rather than considering whether he was entitled to damages as a matter of law. This argument is without merit. As discussed, Ali was

---

[52] *Haywood v. Koehler*, 78 F.3d 101, 105 (2d Cir. 1996).

18

not, as a matter of law, entitled to compensatory damages simply because the jury found liability.[53]

Finally, Ali suggests that the District Court impermissibly added a new claim to the litigation by permitting the jury to conclude that Sergeant Kipp used excessive force when bringing him to the holding cell. This argument is simply a re-packaging of the assertion that the District Court could not adopt a new "theory" of the case, and fails for the same reason.

We thus affirm the judgment of the District Court.

### III. CONCLUSION

To summarize, we hold as follows:

(1) The District Court did not abuse its discretion when it determined that Ali was not entitled as a matter of law to more than nominal damages and therefore denied Ali's Federal Rule of Civil Procedure 59(a) motion for a new trial; and

(2) When attempting to harmonize a seemingly inconsistent verdict, a court is not limited to the specific theories of the case presented by the parties, but may adopt any reasonable

---

[53] *Amato*, 170 F.3d at 314.

view of the case that is consistent with the facts and the testimony adduced at trial.

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.