**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the New Connecticut Bank and Trust Co., N.A. Plaintiff,**

v.

**Rochelle ALTHOLTZ, et al., Defendants.**

**No. CIV3:96CV0382(DJS)(TPS).**

United States District Court,
D. Connecticut.

March 16, 1998.

---

Carolyn W. Kone, Fabiani & Kone, New Haven, CT, Kathryn D. Fabiani, Pepe & Hazard, Southport, CT, for FDIC.

Carolyn W. Kone, Fabiani & Kone, New Haven, CT, for OCWEN Federal Bank, FSB.

Kerry Marc Wisser, Peter Rustin, Weinstein & Wisser, P.C., West Hartford, CT, for Rochelle B. Altholtz, Harvey Altholtz.

Richard Goodman, Goodman, Rosenthal & McKenna, West Hartford, CT, for High Hill Assn., Inc.

### RULING ON THE OBJECTIONS TO THE MAGISTRATE JUDGE'S RECOMMENDED RULING

SQUATRITO, District Judge.

Over objection, the Magistrate Judge's recommended ruling is hereby approved, ratified and adopted as the opinion of the court. Document number 60. The plaintiff's motion for summary judgment is granted. Document number 39.

### RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SMITH, United States Magistrate Judge.

The Federal Deposit Insurance Corporation as Receiver for the New Connecticut Bank & Trust Co., N.A. (the "FDIC") brings this action to foreclose two mortgages (Counts One and Two) and to collect sums owing under a promissory note (Count Three) made by the defendants Rochelle and Harvey Altholtz. The defendants' Answer asserts four affirmative defenses to the plaintiff's Complaint.[1] Now pending before the court is the plaintiff's motion for summary judgment on all of the affirmative defenses and on the First and Third Counts of the Complaint on the issue of liability only.[2] For the reasons that follow, the plaintiff's motion for summary judgment should be granted.

### I. FACTS

The court, after an examination of the Complaint, affidavits and other documents on file, finds the following.

The defendants are in default on three loans made to them by the Connecticut National Bank and Trust Company, N.A. ("CBT"). The first loan (Count One), in the original principal amount of $250,000.00, is secured by a mortgage interest in property known as 5 Linda Lane, Simsbury, Connecticut, which is the defendants' home. The second loan (Count Two), in the original principal sum of $124,000.00, is secured by a mortgage interest in property located at 1 High Ledge Road, Bloomfield, Connecticut. The third loan (Count Three), in the original principal amount of $100,000.00, is also secured by a mortgage interest in the Simsbury property. The three loans are collectively referred to as the Altholtz loans.

On January 6, 1991, the Comptroller of the Currency of the United States of America determined that CBT was insolvent and appointed the FDIC as Receiver of CBT. On

---

1. The undersigned denied the defendants' motion to amend their Answer to allege a counterclaim against the FDIC and to request a jury trial on 7/7/97. The defendants' objection to this decision was overruled by District Judge Dominic J. Squatrito on 12/16/97. The court will therefore respond to the instant motion for summary judgment without addressing the proposed counterclaim or jury trial request.

2. Although the plaintiff's motion seeks summary judgment as to the First and *Second* Counts, the supporting memorandum of law addresses its motion for summary judgment with respect to the First and *Third* Counts. Since the parties have acknowledged that there are genuine issues of material fact in dispute with respect to the allegations of the Second Count (because the promissory note set forth in that Count has been marked "paid"), the court treats the pending motion as seeking partial summary judgment only with respect to the affirmative defenses and the First and Third Counts of the Complaint.

that date, the FDIC caused a new national banking association to be created, the New Connecticut Bank & Trust Company, N.A. ("New CBT") and transferred certain assets of CBT to New CBT, including the Altholtz loans. On July 11, 1991, the Board of Directors of the FDIC dissolved New CBT. The FDIC was appointed Receiver of New CBT effective July 13, 1991, thereby succeeding to all the rights of New CBT in the Altholtz loans.

After the FDIC was appointed Receiver of New CBT, the defendants were notified that any attempts to resolve their outstanding indebtedness to New CBT should be negotiated through RECOLL Management Corporation ("RECOLL"), the loan servicing company the FDIC had engaged to service certain loans, including the Altholtz loans.[3] In July of 1991, Mr. Altholtz met with Steve Sanicola, a RECOLL loan officer, and allegedly orally agreed to the following resolution of the defendants' outstanding indebtedness: Mr. Altholtz would pay $225,000.00 within ninety days and give the FDIC a deed in lieu of foreclosure of the Bloomfield property, in return for which the FDIC would release the $250,000.00 and $100,000 notes and the mortgages on the Simsbury property, without further liability on the part of the defendants under any of the Altholtz loans.[4] Following his meeting with Mr. Sanicola, Mr. Altholtz allegedly took several steps to secure the appropriate financing, expending considerable time and money in the process, and ultimately obtained a commitment from Northeast Savings Bank for the financing required under the purported settlement agreement.[5]

In August of 1991, when Mr. Altholtz contacted RECOLL regarding the settlement agreement, he learned that Mr. Sanicola was no longer employed by RECOLL, and there was no record of the agreement he had allegedly made with Mr. Sanicola.[6] In September of 1991, Mr. Altholtz submitted a settlement proposal which he claimed was identical to the agreement he previously made with Mr. Sanicola to Gary Dunn, the RECOLL account officer assigned to collect the Altholtz loans in late August of 1991. Though Mr. Dunn agreed to seek the necessary internal approvals to finalize the agreement, the proposal was ultimately rejected by RECOLL's internal credit approval committee, and was never finalized. The Altholtz loans were subsequently transferred to another area within RECOLL, where collection efforts continued and ultimately resulted in the present action.

## II. STANDARD

Fed.R.Civ.P. 56(c) states in pertinent part, "the motion [for summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

3. The servicing agreement between the FDIC and RECOLL delegated limited and conditional authority to settle loan obligations. The plaintiff offers affidavits evidencing a complex and heavily documented approval process for settlement agreements, especially those involving debtors that were part of a credit relationship that owed the FDIC in excess of $5 million. Mr. Altholtz was one such debtor.

4. There is some conflict among Mr. Altholtz' statements regarding the timing of his meeting with Mr. Sanicola (whether it was before or after the FDIC was appointed Receiver of New CBT and RECOLL began servicing his loans) and the terms of the settlement agreement (Mr. Altholtz testified at one point that he could not recall the settlement amount, and later, in his proposed counterclaim, he stated that the settlement amount was approximately $215,000.00). However, given that Mr. Altholtz had the benefit of

discovery to help refresh his recollections when filing his most recent Affidavit, and that all ambiguities must be resolved in favor of the party against whom summary judgment is sought, *Eastway Constr., Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the court construes any ambiguities in favor of Mr. Altholtz for the purposes of the instant motion.

5. The plaintiff notes that Mr. Altholtz has produced no documentation relating to the Northeast Savings Bank loan application or commitment.

6. Additionally, Mrs. Altholtz, at her deposition, could not recall if her husband told her that he had reached an agreement with Mr. Sanicola, RECOLL, the FDIC, or anyone with respect to the Altholtz loans.

is entitled to summary judgment as a matter of law." In *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery upon motions, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7] All ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *Eastway Constr., Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

## III. DISCUSSION

The defendants raise four affirmative defenses, upon all of which the plaintiff seeks summary judgment. The defendants' first affirmative defense alleges that the plaintiff breached an agreement to settle the debts which are the subject of this action. In their second affirmative defense, pled as alternative to the first affirmative defense, the defendants claim that the FDIC breached the implied covenant of good faith and fair dealing in their handling of the settlement proposal which they ultimately agreed to evaluate. The defendants' third affirmative defense argues that the plaintiff's claims are barred by the doctrine of unclean hands. Finally, the defendants allege in their fourth affirmative defense that the plaintiff's claims are barred by the statute of limitations. The court will address the plaintiff's arguments regarding each of these affirmative defenses in seriatim.

### A. *First Affirmative Defense—Breach of Settlement Agreement*

The defendants' first affirmative defense alleges that the defendants entered into an agreement to settle their debts with the plaintiff, through its agent Mr. Sanicola, and that while the defendants complied with the agreement, the plaintiff breached the settlement agreement by failing to honor its terms. The plaintiff argues it is entitled to summary judgment on this affirmative defense on three grounds: (1) a claim that a creditor breached a settlement agreement is not a valid defense to a foreclosure action or an action to collect a debt; (2) the alleged oral settlement agreement does not satisfy the Statute of Frauds; and (3) Mr. Sanicola's oral promises to settle the defendants' indebtedness did not create a binding contract between the defendants and the FDIC because Mr. Sanicola did not have authority to bind the FDIC. Because the court finds the alleged oral agreement between Mr. Sanicola and the defendants does not satisfy the Statute of Frauds, and the defendants have not alleged sufficient acts of part performance to prevent the Statute of Frauds from disallowing their claim as a matter of law, there is no need to address the plaintiff's additional arguments regarding this affirmative defense.

Connecticut General Statutes Section 52–550(a)(4) provides in pertinent part:

No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: ... (4) upon any agreement for the sale of real property or any interest in or concerning real property ....

Thus, the question to be decided is whether a settlement agreement to release mortgages on real property in return for payment in the form of cash and a deed in lieu of foreclosure concerns "the sale of real property or any interest in or concerning real property," such that the agreement must satisfy the requirements of the Statute of Frauds. The defendants predictably argue that the instant agreement does not fall within the Statute of Frauds, while the plaintiff claims the opposite.

It appears that no Connecticut case law directly addresses whether an oral settle-

---

7. Similarly, summary judgment should be granted on an affirmative defense in favor of the plaintiff if the moving party shows that " " 'there is an absence of evidence to support [an essential element of] the [non-moving party's] case.' " " *FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citations omitted and brackets in original).

ment agreement such as the one at issue here is an interest in land so as to fall within the Statute of Frauds. While several recent cases have held that an agreement which involves the forbearance of a mortgagee's enforcement rights under a mortgage must satisfy CONN. GEN. STAT. § 52–550(a) in order to be enforceable and to defeat a foreclosure action,[8] there is also authority for the proposition that an oral agreement to cancel a note and mortgage does not concern an interest in land so as to fall within the Statute of Frauds because such an agreement to cancel a debt does not involve a conveyance of an interest in land. *Becker v. Dramin*, 6 Conn.Supp. 33 (1938).[9] Furthermore, District Judge Alfred V. Covello recently ruled that genuine issues of material fact and law remained with respect to whether an alleged oral "right to match" agreement is one that is " 'for the sale or[sic] real property or any interest in or concerning real property.' " *Aldin Assoc. Ltd. Partnership v. Recoll Management Corp.*, No. 3:94cv1965, slip. op. at 1 (D.Conn. Sept. 24, 1997) (quoting CONN. GEN. STAT. § 52–550(a)(4)).

■ The court need not resolve the apparent discrepancy in authority here, however, because the instant settlement agreement, unlike the agreements in *Becker* or *Aldin*, clearly anticipates the conveyance of real estate to the plaintiff. Rather than recover full title to the mortgaged property, the oral agreement contemplated that the defendants would tender the deed to the Bloomfield property as part of the settlement agreement. This is not a case where, when "the debt is canceled . . . the security goes back to him who gave .it." *Becker*, 6 Conn.Supp. at 35. Accordingly, the court finds that an agreement to release mortgages on real property in return for payment in the form of cash and a deed in lieu of foreclosure is an agreement conveying an "interest in or concerning real property" under Connecticut General Statutes Section 52–550(a)(4). *See Wolfe v. Wallingford Bank & Trust Co.*, 122 Conn. 507, 509, 191 A. 88 (1937) (a mortgagee's oral agreement to reconvey mortgaged premises to a mortgagor after a foreclosure was within Statute of Frauds).

■ The defendants further argue that even if the Statute of Frauds does apply to the agreement which is the basis of the defendants' first affirmative defense, documents submitted by the plaintiff (i.e., Gary Dunn Aff. ¶ 6 and his notes attached as Ex. A) satisfy the Statute's requirements. A writing is sufficient under the Statute of Frauds "if the memorandum, with reasonable certainty, furnishes reliable evidence that the parties have come to a complete agreement ." *Lynch v. Davis*, 181 Conn. 434, 439, 435 A.2d 977 (1980). Rather than reliably evidencing an agreement between the parties, the affidavit and exhibit pointed to by the defendants simply indicate that Mr. Dunn had a telephone conversation with Mr. Altholtz in

---

8. See *First Fed. Sav. & Loan Ass'n of East Hartford v. Chappell*, No. CV–96–61212S, 1997 WL 12801, at *3 (Conn.Super.Ct. Jan. 3, 1997) (an alleged agreement to release mortgagor from liability on mortgage debt must comply with Statute of Frauds); *Lafayette Bank & Trust Co. v. D'Addario*, No. CV–92–0293534S, 1993 WL 407842, at *2 (Conn.Super.Ct. Oct. 7, 1993) (an agreement not to demand payment on note secured by a mortgage is an agreement to surrender an interest in property which must comply with the Statute of Frauds because if plaintiff cannot demand payment, it cannot foreclose its mortgage); *Glastonbury Bank & Trust Co. v. Corbett Constr. Co., Inc.*, No. 521355, 1992 WL 316472, at *3 (Conn.Super.Ct. Oct. 15, 1992) (holding a forbearance agreement is within the purview of the Statute of Frauds because it is an agreement to surrender an interest in land and citing cases from other jurisdictions which hold that a release of a mortgage must be in writing).

9. In so holding, the *Becker* court noted the distinction between the way different jurisdictions regard the nature of a mortgage interest. "In those jurisdictions which regard the mortgage, that is, the conveyance of title to real estate as the principal thing, the courts naturally hold that an agreement to cancel a mortgage is an agreement to convey an interest in lands. But where, as in this State, it is held that the debt is the principal thing and that the conveyance of the title to real estate is simply security for the debt, it is held that an agreement to cancel is not within the Statute of Frauds." *Becker*, 6 Conn. Supp. at 36. In light of this authority, the *Becker* court reasoned that no conveyance of the mortgaged property back to the mortgagor would occur because, "[i]f the debt is canceled the security lapses as a matter of course. The security follows the debt and if the debt is canceled there is nothing left to be secured, and, in equity, the security goes back to him who gave it." *Id.* at 35.

which the defendant outlined the terms of the alleged settlement agreement made with Mr. Sanicola, and that Mr. Dunn found no written record of any such settlement agreement in Mr. Altholtz's file. These "writings" do not meet the statutory requirement of a written "memorandum of the agreement signed by the party, or the agent of the party, to be charged." Conn. Gen. Stat. § 52–550(a). Thus, the Statute of Frauds is not satisfied by a sufficient writing in this case.

■■■ Finally, the defendants suggest that by applying for a loan commitment to fund the settlement, they have partially performed the settlement agreement, which act takes the settlement agreement out of the Statute of Frauds. The Connecticut Supreme Court has stated that "where one party, in reliance upon the contract, has partly performed it, to such an extent that a repudiation of the contract by the other party would amount to the perpetration of a fraud, equity looks upon the contract as removed from the operation of the statute of frauds and will enforce it by specific performance or give other relief as the case may be." *Santoro v. Mack*, 108 Conn. 683, 690, 145 A. 273 (1929). The doctrine of part performance requires "as an essential element, conduct that is 'referable to and consistent with [an] oral agreement between the parties.'" *Dunham v. Dunham*, 204 Conn. 303, 314, 528 A.2d 1123 (1987) (citations omitted). However, acts "of a purely preliminary or collateral character, done ... only in anticipation of the actual performance of a contract by both parties," are not considered to be acts of part performance because they do not compel the inference that there was some contract by which these acts were required and therefore explainable upon no other theory. *Santoro*, 108 Conn. at 692, 145 A. 273. Acts prior or preliminary to the acquisition of title, such as partial payment of the purchase price or application for a mortgage to finance the purchase, are not acts of part performance; they are instead considered to be preliminary in nature. *Id.; Camerota v. Wisniewski*, 21 Conn.Supp. 88, 91, 145 A.2d 139 (1958). Thus, the defendants' alleged application for a loan commitment to fund the settlement was not an act of part performance which would take the settlement agreement out of the Statute of Frauds and eliminate the need for an appropriate writing.

In summary, the plaintiff's motion for summary judgment on the first affirmative defense should be granted because the alleged oral settlement agreement between Mr. Sanicola and the defendants does not satisfy the Statute of Frauds, and the defendants have not alleged sufficient acts of part performance to prevent the Statute of Frauds from disallowing their claim as a matter of law.

*B. Second Affirmative Defense—Breach of Implied Covenant of Good Faith and Fair Dealing*

In their second affirmative defense, the defendants contend that they had an agreement with Gary Dunn, the RECOLL account officer placed in charge of their loans in August of 1991, whereby Mr. Dunn agreed to seek the necessary internal approvals of the settlement proposal submitted by Mr. Altholtz in September of 1991. When the settlement proposal was rejected by RECOLL's internal credit approval committee, the defendants claim the FDIC's failure to complete the review process constituted a breach of the implied covenant of good faith and fair dealing.

The plaintiff seeks summary judgment in its favor on this affirmative defense for three reasons: (1) because there was no enforceable agreement between the parties to settle their disputes, there can be no breach of the implied covenant of good faith and fair dealing; (2) a defense of breach of the implied covenant of good faith and fair dealing based upon post-default actions of the mortgagee is not a valid defense to a mortgage foreclosure action; and (3) a defense of breach of the implied covenant of good faith and fair dealing is precluded by 12 U.S.C. § 1823(e). As the court is persuaded by the plaintiff's first argument, there is no need to address the alternative arguments put forth.

■■■ The concept of good faith and fair dealing is "[e]ssentially ... a rule of construction designed to fulfill the reasonable expectations of the contracting parties as

they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract." *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 567, 479 A.2d 781 (1984). As a result, in the absence of a provision in the original promissory note or mortgage deed which constitutes an agreement to work out the loan default or restructure the agreement, there can be no breach of the covenant of good faith and fair dealing for the mortgagee's failure to do so. *See Connecticut Nat'l Bank v. Montanari*, No. CV–92–0517808S, 1994 WL 29929, at *2 (Conn.Super.Ct. Jan. 26, 1994) (bank's breach of its oral agreement to restructure the defendants' mortgage debt did not violate the covenant of good faith and fair dealing because there were no provisions in the note or mortgage constituting an agreement to work with the defaulting defendants or to restructure their loan terms); *Bristol Sav. Bank v. Cellino*, No. CV–91–0504535S, 1993 WL 197872, at *2 (Conn.Super.Ct. June 2, 1993) (despite bank vice president's oral promise to convert a promissory note into a permanent mortgage loan, bank's failure to do so did not violate the covenant of good faith and fair dealing because there was no provision in the relevant papers which constituted such an agreement), *aff'd*, 34 Conn.App. 914, 642 A.2d 756 (1994), *cert. denied*, 230 Conn. 907, 644 A.2d 919 (1994).

As the parties do not dispute that there are no such provisions in any of the loan documents, there was no enforceable agreement between the parties to settle their disputes, and the FDIC's failure to accept the defendants' settlement proposal cannot be found to have violated the covenant of good faith and fair dealing.[10] The plaintiff's motion for summary judgment on the second affirmative defense should, therefore, be granted.

*C. Third Affirmative Defense—Unclean Hands*

The defendants assert a third affirmative defense of unclean hands based on the plaintiff's breach of the settlement agreement allegedly reached between Mr. Altholtz and Mr. Sanicola in July of 1991. The plaintiff argues the defense of unclean hands is not an appropriate defense to this foreclosure action, thus entitling it to summary judgment on this affirmative defense. The court finds that while the doctrine of unclean hands may be an available defense to a foreclosure action, it is inapplicable to the instant case.

Several superior court decisions have disallowed the defense of unclean hands in a mortgage foreclosure action. *See Founders Bank v. Belbusti*, No. CV–91–0314379, 1993 WL 544695, at * 2 (Conn.Super.Ct. Dec. 27, 1993); *Gateway Bank v. Raquetball Spa Inc.*, No. CV–93–302425, 1993 WL 394363, at

---

**10.** To the extent that the defendants point to a breach of the covenant of good faith and fair dealing arising not from the original loan documents, but from Mr. Dunn's promise to pursue approval of the September 1991 settlement proposal, the court is not persuaded that this promise obligated the FDIC to work out the defendants' loans. Rather, in the defendant's own words, Mr. Dunn promised to "seek the necessary internal approvals to finalize a settlement." Harvey Altholtz Aff. ¶ 11. Mr. Dunn sought such approval, preparing a Controlled Loan workout Sheet, a Strategy and Status Report, and an Executive Summary, the last of which was approved by Mr. Dunn's Group Leader and District Manager, and further requesting that the settlement proposal be scheduled for review by the Loan Committee. Gary Dunn. Aff. ¶¶ 8, 10. That he did not ultimately receive approval of the settlement agreement due to the transfer of the defendants' loans to a larger group, Paul Mandell Aff. ¶ 9, does not constitute a breach of his agreement, much less a violation of the covenant of good faith and fair dealing by the FDIC, assum-

ing, *arguendo*, that such a duty arose from the subsequent agreement, over which fact the court expresses doubt. *See Connecticut Nat'l Bank v. Montanari*, No. CV–92–0517808S, 1994 WL 29929, at *2 (Conn.Super.Ct. Jan. 26, 1994) (bank's breach of its oral agreement to restructure the defendants' mortgage debt did not violate the covenant of good faith and fair dealing); *Bristol Sav. Bank v. Cellino*, No. CV–91–0504535S, 1993 WL 197872, at *2 (Conn.Super.Ct. June 2, 1993) (despite bank vice president's oral promise to convert a promissory note into a permanent mortgage loan, bank's failure to do so did not violate the covenant of good faith and fair dealing); *see also Citicorp Mortgage, Inc. v. Miller*, No. CV–95–0326759S, 1996 WL 753094, at *2 (Conn.Super.Ct. Dec. 17, 1996) ("[U]nless provided for in the loan documents, the lender has no duty to enter into workout negotiations with a mortgagor."); *Dacourt Group, Inc. v. Babcock Ind., Inc.*, 747 F.Supp. 157, 160 (D.Conn.1990) (holding a binding preliminary agreement sufficient to support an implied duty of good faith did not exist).

*1–2 (Conn.Super.Ct. Sept. 27, 1993); *Mechanics and Farmers Sav. Bank, FSB v. Delco Dev. Co., Inc.*, 43 Conn.Supp. 408, 420–421, 656 A.2d 1075 (1993), *aff'd*, 232 Conn. 594, 656 A.2d 1034 (1995), *cert. denied*, 516 U.S. 930, 116 S.Ct. 335, 133 L.Ed.2d 235 (1995). However, the trend appears to recognize that "[a]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court." *A & B Auto Salvage, Inc. v. Zoning Bd. of Appeals*, 189 Conn. 573, 578, 456 A.2d 1187 (1983); *see Milford Bank v. Barbieri*, No. CV–93–043315S, 1994 WL 495420, at *2 (Conn.Super.Ct. Aug. 30, 1994) (quoting *A & B Auto Salvage, supra*); *Lafayette Bank & Trust Co. v. D'Addario*, No. CV–92–0293534S, 1993 WL 407842, at *2 (Conn.Super.Ct. Oct. 7, 1993) (defense of unclean hands may be proper in a foreclosure action) (citing *Boretz v. Segar*, 124 Conn. 320, 323–24, 199 A. 548 (1938)); *New England Sav. Bank v. High Ridge, Inc.*, No. 097113, 1991 WL 209038, at *2 (Conn.Super.Ct. Oct. 3, 1991) (quoting *A & B Auto Salvage, supra*). Nevertheless, courts recognizing this defense have limited its availability. *See Milford Bank*, 1994 WL 495420, at *2 (the party seeking to invoke the clean hands doctrine must show his opponent engaged in willful misconduct); *National Mortgage Co. v. McMahon*, No. CV–93–0349246S, 1994 WL 60093, at *2 (Conn.Super.Ct. Feb. 18, 1994) (unclean hands defense proper only when attacks the making, validity, or enforcement of the note or mortgage, rather than some act or procedure of the mortgagee); *Lafayette Bank*, 1993 WL 407842, at *2 (unclean hands defense must attack the making, validity or enforcement of the note or mortgage).

 Without deciding which single standard, if any, is appropriately applied, the court finds that the facts of the instant case do not rise to the level required by any of these iterations. In claiming the FDIC breached the agreement between Mr. Altholtz and Mr. Sanicola to settle their loans, the defendants have not shown that the FDIC engaged in willful misconduct. *See Milford Bank*, 1994 WL 495420, at *2 (bank's failure to accept tender of mortgaged property after discussion of options including same not willful misconduct enabling the defendant to invoke the clean hands doctrine). Nor does their claim attack the making, validity or enforcement of the note or mortgage. *See People's Bank v. Guttman*, No. CV–93–0306692, 1995 WL 94520, at *2 (Conn.Super.Ct. Feb. 27, 1995) (bank's alleged failure to restructure the defendant's mortgage does not reflect upon the making or validity of the mortgage; rather, defendant's claim goes to non-performance by the plaintiff with regard to dealings between the parties which are separate from the original note and mortgage); *National Mortgage Co.*, 1994 WL 60093, at *2 (defendant's allegations that bank failed to fairly engage in workout negotiations does not address the making, validity or enforcement of the note and mortgage, but rather addresses the plaintiff's business judgment).[11]

 Finally, most courts agree that the "clean hands doctrine is applied not for the protection of the parties but for the protection of the court." *Pappas v. Pappas*, 164 Conn. 242, 246, 320 A.2d 809 (1973). " 'It is applied not by way of punishment but on considerations that make for the advancement of right and justice.' " *Milford Bank*, 1994 WL 495420, at *2 (quoting *Kulmacz v. New York Life Ins. Co.*, 39 Conn.Supp. 470,

---

**11.** The defendants point to a 1994 Superior Court decision, *Trefz v. Coppola*, No. 310324, 1994 WL 518191 (Conn.Super.Ct. Sept. 14, 1994), in arguing that their unclean hands defense need not attack the making, validity or enforcement of the note itself. In declining to strike the defendant's special defense, the *Trefz* court does appear to allow a defense not specifically relating to the making, validity, or enforcement of the note or mortgage. However, the actions forming the basis of the *Trefz* defendant's special defense (the plaintiff's alleged use of the foreclosure action not simply to recover on a defaulted loan, but to obtain exclusive possession of the partnership assets and foist substantially all of the liabilities of the former partnership onto the defendant) were quite egregious, thus leading the court to exercise its discretion and withhold foreclosure in order to do justice between the parties. The extreme nature of the action which formed the basis of the special defense in *Trefz*, combined with the weight of authority requiring that a valid special defense attack the making, validity or enforcement of the note or mortgage, lead this court to decline to accept the defendants' assertion that their defense need not attack the making, validity or enforcement of the note or mortgage.

476, 466 A.2d 808 (1983)). Based on this standard, the court concludes that application of the unclean hands doctrine is inappropriate in this case because the plaintiff's failure to accept the defendants' settlement offer is not sufficiently offensive to implicate the integrity of the court. *See Milford Bank*, 1994 WL 495420, at *2 (bank's failure to accept tender of mortgaged property after discussion of options including same does not require the court to invoke the doctrine of unclean hands); *Gateway Bank v. Raquetball Spa, Inc.*, No. CV–93–302425, 1993 WL 394363, at *2 (Conn.Super.Ct. Sept. 27 1993) (bank's refusal to vary the rate of interest in accordance with the terms of the notes and modification agreements does not require the court to apply the doctrine of unclean hands for the court's protection); *Mechanics and Farmers Sav. Bank, FSB v. Delco Dev. Co., Inc.*, 43 Conn.Supp. 408, 420–21, 656 A.2d 1075 (1993) (bank's alleged violation of federal regulation by waiving required appraisals in loan transaction does not require court to deny relief to mortgagee to protect court's own integrity), *aff'd*, 232 Conn. 594, 656 A.2d 1034 (1995), *cert. denied*, 516 U.S. 930, 116 S.Ct. 335, 133 L.Ed.2d 235 (1995).

In conclusion, the defendants' affirmative defense of unclean hands, while an available defense to a foreclosure action, is inapplicable to the instant case. The plaintiff's motion for summary judgment on the third affirmative defense should, therefore, be granted.

#### D. Fourth Affirmative Defense—Statute of Limitations

The defendants concede that the plaintiff has demonstrated that it is entitled to summary judgment with regard to their fourth affirmative defense based on the statute of limitations. Thus, summary judgment should enter on this affirmative defense without further discussion.

#### E. Liability as to the First and Third Counts

As the court recommends granting summary judgment in favor of the plaintiff on all of the defendants' affirmative defenses, and as the defendants do not contest the underly-ing loan obligations, their default on those loans, or their notification thereof, the plaintiff's motion for summary judgment on the First and Third Counts of its Complaint on the issue of liability only should be similarly granted. *See U.S. v. Freidus*, 769 F.Supp. 1266, 1277 (S.D.N.Y.1991) (the essential requirements in foreclosure action are proof of the existence of an obligation secured by mortgage and a default on that obligation) (citing *Northeast Sav., F.A. v. Rodriguez*, 159 A.D.2d 820, 553 N.Y.S.2d 490, 492 (1990) (plaintiff is entitled to summary judgment in foreclosure action where the documentary evidence establishes a valid mortgage and the defendants admit that there is an unpaid balance due on the mortgage and receipt of the foreclosure notice)).

### IV. CONCLUSION

For the aforementioned reasons, the plaintiff's motion for summary judgment (**document # 39**) should be **GRANTED** in its entirety.

Either party may seek review of this report and recommendation as provided in 28 U.S.C. § 636(b) (written objections to recommended ruling must be filed within ten days of service of the same); Fed.R.Civ.P. 6(a), 6(e), & 72; and Rule 2 of the Local Rules for United State Magistrate Judges (D.Conn.). **Failure to object in a timely manner may preclude further review.** *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).