# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 1, 2011       Decided December 9, 2011

No. 09-7032

CAROLYN SINGH,
APPELLANT

v.

GEORGE WASHINGTON UNIVERSITY
SCHOOL OF MEDICINE AND HEALTH SCIENCES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cv-01681)

*Kate Bushman*, Supervising Attorney, argued the cause as *amicus curiae* in support of appellant. With her on the briefs were *Steven H. Goldblatt*, appointed by the court, and *Elizabeth A. Spavins* and *Stephanie B. Lezell*, Student Counsel.

*Carolyn Singh*, pro se, filed briefs for appellant.

*Henry Morris Jr.* argued the cause for appellees. With him on the brief was *Kristine J. Dunne*.

*Robert A. Burgoyne* and *Ada Meloy* were on the brief for *amici curiae* American Council on Education, et al.

Before: ROGERS and GARLAND, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal is before the court following a remand.  In the first appeal the court established the legal standards the district court must apply in determining whether Carolyn Singh, a former medical student, had an impairment that substantially limited her in the major life activity of learning under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*. Specifically, the court rejected both the district court's use of a comparison group of other medical students, holding that the correct comparator was the average person, and its focus on test-taking, holding that the major life activity at issue was Singh's ability to learn.  *Singh v. Geo. Wash. Univ. Sch. of Med. & Health Scis.* ("*2007 Singh Appeal*"), 508 F.3d 1097, 1100, 1104 (D.C. Cir. 2007).  Having failed to prevail again, Singh, assisted by amicus, contends that on remand the district court erred by failing to apply the 2008 amendments to the ADA and in relying on her prior academic achievement in assessing whether she suffered from a disability under the ADA.  Because Singh fails to show legal or clear factual error by the district court, *see Cuddy v. Carmen*, 762 F.2d 119, 123 (D.C. Cir. 1985), we affirm.

**I.**

During Singh's time as a medical student at George Washington University, her poor grades placed her continued enrollment at risk on four occasions.  She had been admitted to the University's Decelerated Program for students with weaker academic records, in view of her poor performance on the standardized medical-school entrance exam ("MCAT").

Students in the Decelerated Program have two years to complete the curriculum that regular-matriculation students finish in their first year.  The University requires Decelerated-Program students to maintain adequate academic performance and publishes academic regulations that set out a procedure for dismissal in the event of poor performance.

Despite Singh's overall academic success in high school and college, she quickly encountered difficulty in medical school.  Beginning in her first semester in Fall 2000 and continuing throughout her six semesters at the University, Singh received failing grades in multiple courses and failed to satisfy the University's standard-deviation requirement in others.  Nevertheless, Singh maintained an active extracurricular schedule throughout this period, including serving as the social chair of the University's student council, participating in multiple medical associations as the student representative, and enrolling in a music course.  Singh's pattern of poor academic performance was evaluated by the Medical Student Evaluation Committee ("MSEC") on three occasions.  On the first two occasions, she was advised to re-take certain courses, to reduce or eliminate her extracurricular activities, to improve her study habits, and generally to concentrate on her medical studies.  In the last review, when her grades did not improve, the MSEC recommended to the Dean of the medical school that she be dismissed.  Singh was "quite distressed" by this turn of events, Trial Tr. Nov. 22, 2005, at 150, and sought advice from the University's Disability Support Services, which referred her to Dr. Anne Newman for psycho-educational testing.  After interviewing Singh about her background and administering diagnostic tests, Dr. Newman concluded that Singh had a reading disorder – dyslexia – as well as a mild processing-speed disorder.  Report of Anne C. Newman, Ph.D., on Feb. 19, 2003 interpretative session ("Newman Report"), at 7.  Dr.

Newman recommended a number of academic accommodations, psychotherapy, investigation of the appropriateness of psychostimulant medication, and a reduction in volunteer activities.

Meanwhile, the Dean of the medical school had received the MSEC's dismissal recommendation and he concurred. On February 11, 2003, the Dean met with Singh and her mother to notify Singh of the MSEC's recommendation and his decision to dismiss her. Singh informed the Dean of Dr. Newman's pending report, which she forwarded to the Dean two weeks later. On March 5, 2003, the Dean officially notified Singh by letter of her dismissal from the University; the Dean later testified that Dr. Newman's report "played no role" in his decision to dismiss Singh. Trial Tr. Nov. 23, 2005, at 403–04.

In 2003, Singh filed a complaint alleging that the University had unlawfully discriminated against her in violation of the ADA. The district court granted summary judgment in part for Singh, finding that "[a] reasonable fact finder could only conclude that plaintiff suffers from some kind of mental impairment," but denied summary judgment as to whether her learning was substantially limited. *Singh v. Geo. Wash. Univ.*, 368 F. Supp. 2d 58, 63 (D.D.C. 2005). After a bench trial, the district court found that Singh did not have a disability as defined under the ADA and entered judgment for the University. *Singh v. Geo. Wash. Univ. Sch. of Med. & Health Scis.*, 439 F. Supp. 2d 8, 16 (D.D.C. 2006). Finding that Singh had failed to show that her impairment had caused a substantial limitation on learning, the district court stated that, "[t]o the contrary, [Singh] appear[ed] quite able to succeed in the major life activity of learning, including test-taking in general." *Id.* at 14.

On appeal, this court held that the proper comparison group for the substantial-limitation determination was the general population, not other people of comparable age and educational background as the district court had ruled, and that the relevant major life activity was learning, not test-taking. *2007 Singh Appeal*, 508 F.3d at 1100, 1104. The court remanded the case, stating that the district court had "fail[ed] to state important factual findings specially," "intermix[ed] . . . the legal standards of impairment with those of substantial limitation," and mischaracterized the testimony of Dr. Rick Ostrander, the University's expert witness. *Id.* at 1106–07.

On remand, the district court revised and clarified its analysis but reached the same result as it had in 2005. *Singh v. Geo. Wash. Univ. Sch. of Med. & Health Scis.* ("*2009 Remand Opinion*"), 597 F. Supp. 2d 89, 90 (D.D.C. 2009). In applying the comparison-group and major-life-activity standards established by this court and in concluding that Singh had failed to demonstrate a disability under the ADA, the district court concluded that it did not need to decide whether the alleged limitation was "substantial" because Singh "ha[d] not shown that her limitation [was] a result of her impairment." *Id.* at 96. The district court found that Singh's expert, Dr. Newman, had failed "to establish the requisite causal link," and that Singh's "spotty, anecdotal corroborative evidence [did] not suffice" to bolster that causation evidence. *Id.* at 97. Singh appeals.

## II.

The ADA prohibits discrimination against disabled individuals. 42 U.S.C. § 12182(a). An individual seeking to establish a disability must prove, by a preponderance of the evidence, *see Flemmings v. Howard Univ.*, 198 F.3d 857, 861

(D.C. Cir. 1999), that (1) she suffers from a physical or mental impairment; (2) the impairment relates to a "major life activity," and (3) the impairment "substantially limits" her in one or more "major life activities," 42 U.S.C. § 12102(1); *see Haynes v. Williams*, 392 F.3d 478, 482 (D.C. Cir. 2004). As established in the prior proceedings, the impairment at issue is Singh's learning disorder, and the corresponding major life activity is learning.

**A.**

Effective January 1, 2009, Congress amended the ADA. *See* ADA Amendments Act of 2008 ("ADAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008). Congress rejected the Supreme Court's prior holding that the ADA set forth a "demanding standard for qualifying as disabled," *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002), as well as the holding in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 475 (1999), that courts should account for mitigating measures when making disability determinations. ADAA, § 2, 122 Stat. at 3554. The ADAA provides that the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . learned behavioral or adaptive neurological modifications." *Id.* § 4, 122 Stat. at 3556.

Singh contends that the district court erred in failing to apply the ADAA, which was the law in effect at the time of its decision on remand. The University objects to our consideration of this contention on two grounds: forfeiture and retroactivity. We need not address forfeiture because the second objection is well taken.

Courts disfavor retroactive application of laws absent clear expression of congressional intent to do so. *See*

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 264, 272 (1994). This anti-retroactivity principle is grounded in the notions of fair notice and reasonable reliance. *See id.* at 265. In determining whether a statute can operate retroactively, the court asks "whether the new provision attaches new legal consequences to events completed before its enactment," *id.* at 270, a question that may turn on the nature of the relief sought by the plaintiff. "When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Id.* at 273. Damages constitute retrospective relief and thus raise retroactivity concerns. *See id.* at 281–84. The statute in *Landgraf* posed retroactivity problems because it expanded the types of relief available to plaintiffs. *See id.* at 253–54. Although the Supreme Court recognized that the new compensatory-damages provision "only reach[ed] discriminatory conduct already prohibited by Title VII," and thus the defendant was already on notice that the relevant conduct was unlawful, the new provision "affect[ed] the liabilities of defendants," impacted the "private parties' planning," and "attach[ed] an important new legal burden to that conduct." *Id.* at 282–83. As such, retroactive application was not appropriate. *Id.* at 284. As a cautionary note, the Court instructed that although "[i]t will frequently be true . . . that retroactive application of a new statute would vindicate its purpose more fully," that "consideration . . . is not sufficient to rebut the presumption against retroactivity." *Id.* at 285–86.

This court held in *Lytes v. D.C. Water & Sewer Authority*, 572 F.3d 936, 938 (D.C. Cir. 2009), that Congress did not intend the ADAA to operate retroactively, pointing in particular to Congress' decision to set an effective date in the future. *See also Fikes v. Wal-Mart, Inc.*, 332 F. App'x 882, 883 n.1 (11th Cir. 2009); *EEOC v. Argo Distrib., LLC*, 555

F.3d 462, 469 n.8 (5th Cir. 2009); *Kiesewetter v. Caterpillar Inc.*, 295 F. App'x 850, 851 (7th Cir. 2008). In *Lytes*, the plaintiff had sought retrospective relief, including damages and back pay. 572 F.3d at 939. Singh emphasizes that she does not seek monetary damages, *see Singh*, 368 F. Supp. 2d at 72, and that the injunctive relief she seeks would operate in the future and is thus prospective. To gain that relief, however, Singh must first be reinstated, overturning the University's decision in 2003 to dismiss her; her complaint seeks a declaratory judgment that she "is a student in good standing" at the University. Compl. at 12. Much as with a request for damages, reinstatement is backward-looking and seeks to remedy a past unlawful act. *See Lytes*, 572 F.3d at 939, 945; *Dave v. Lanier*, 681 F. Supp. 2d 68, 72 n.3 (D.D.C. 2010). Applying the ADAA to the University's decision in 2003 to dismiss Singh would be changing the laws that governed the University's liability at that time, imposing a new legal burden on the University's past conduct. As such, its application would be impermissibly retroactive.

**B.**

Singh also contends that the district court clearly erred on remand in finding that her impairment did not substantially limit her ability to learn. Specifically she takes issue with the district court's consideration of her past academic achievement as compelling the conclusion that she failed to show causation. She emphasizes that the ADA requires proof of a present, not past, substantial limitation.

The district court's decision on remand rested on the factual findings that: (1) Singh had an impairment; (2) Singh presented evidence of a limitation on her learning ability; (3) numerous potential causes existed to explain that limitation; and (4) Singh failed to demonstrate by a preponderance of the evidence that her impairment, and not the other factors,

caused that limitation. Based on these findings, the district court concluded that Singh had failed to prove causation, one of the three elements necessary to show the presence of a disability under the ADA. *See 2009 Remand Opinion*, 597 F. Supp. 2d at 96–97. We need not decide whether Singh had an impairment within the meaning of the ADA, or whether that alleged impairment substantially limited a major life activity. The district court's factual finding on causation, *see Daniels v. Hadley Memorial Hosp.*, 566 F.2d 749, 756 n.49 (D.C. Cir. 1977), is not clearly erroneous and that finding alone dooms her case. The district court identified "many reasons aside from [Singh's] impairment that might explain why [she] has done relatively poorly on extremely time-limited tests." *2009 Remand Opinion*, 597 F. Supp. 2d at 96. For example, the district court listed anxiety from the difficulty of the medical school academic environment, "her involvement in extra-curricular activities," which a number of University advisors had suggested she curtail or eliminate in view of her academic difficulties, and poor study habits as possible causes of her poor performance. *Id.* Although the district court prefaced each of these potential causes with the word "perhaps," *id.*, it referenced record evidence for each of the possible causes, including that Singh was overextended in extracurriculars, *id.* at 96 n.7, and had poor study habits, such as her admission that she sang along to music while studying, *id.* at 96 n.8. The district court also identified record evidence of yet other possible causes for Singh's poor performance, such as Singh's own testimony that attributed her academic problems "at least in some degree to . . . being upset over the September 11th [, 2001 terrorist] attacks." Trial Tr. Nov. 21, 2005, at 93–94 (cited by *2009 Remand Opinion*, 597 F. Supp. 2d at 97 n.10).

The district court did not ignore Singh's claim "that she consistently perform[ed] much lower on multiple-choice tests than on other types of assessments," *2009 Remand Opinion*,

597 F. Supp. 2d at 97, or the corroborative evidence Singh presented, but found it to be "spotty" and "anecdotal" and insufficient to establish the necessary causal link. *Id.* Specifically, the district court found that the evidence of her past difficulties with multiple-choice testing failed to close the causal gap between her mental impairment and her limitation in learning, as distinct from test-taking alone. This conclusion holds true regardless of whether Singh was at the top or bottom of her high school class or aced or bombed her MCAT, because that past academic performance had no bearing on causal factors such as Singh's extracurricular involvements and poor study habits. Given the totality of the evidence, the district court did not clearly err in concluding that Singh had failed to meet her burden to demonstrate that her impairment caused her limitation on learning.

To establish a disability under the ADA, a plaintiff must establish not only that she suffers from an impairment but also that the impairment causes a significant limitation on a major life activity. Singh presented evidence that she suffered from a mental impairment and experienced a limitation on learning that was evident while she was in medical school; whether or not she did, multiple factors existed to explain the cause of that limitation. Accordingly, because the district court did not clearly err in finding that Singh failed to establish that her asserted impairment caused her asserted learning limitation, we affirm the judgment of the district court.