24-1941(L)
*Bahl v. New York Institute of Technology*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of December, two thousand twenty-five.

PRESENT: Steven J. Menashi,
Myrna Pérez,
Alison J. Nathan,
*Circuit Judges.*

_____

AJAY BAHL,

*Plaintiff-Appellant,*

v.                                                                              Nos. 24-1941(L),
                                                                                    24-2455(CON)

NEW YORK INSTITUTE OF TECHNOLOGY,

*Defendant-Appellee,*

NATIONAL BOARD OF OSTEOPATHIC MEDICAL EXAMINERS, NORTH SHORE LONG ISLAND JEWISH PLAINVIEW HOSPITAL, PLAINVIEW HOSPITAL,

*Defendants.**

_____

---

* The Clerk of Court is directed to amend the caption as set forth above.

*For Plaintiff-Appellant*:  STEPHEN BERGSTEIN, Bergstein & Ullrich, New Paltz, NY.

*For Defendant-Appellee*:  DOUGLAS P. CATALANO (Stefanie R. Toren, *on the brief*), Clifton Budd & DeMaria, LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Chin, J., sitting by designation).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Ajay Bahl sued the New York Institute of Technology ("NYIT") in part for violating his rights under the Rehabilitation Act, 29 U.S.C. § 794(a), and the New York State Human Rights Law, N.Y. Exec. L. § 296(2), by failing to provide him a reasonable accommodation for his ADHD and other mental health disorders in connection with his attempts to pass the medical licensing exams. A jury found that he had failed to prove his claims, and the district court denied Bahl's motion for a judgment as a matter of law. We affirm the judgment of the district court. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

**I**

NYIT operates an osteopathic medical school. Like other accredited osteopathic medical schools, NYIT requires its students to pass two levels of COMLEX exams administered by the National Board of Osteopathic Medical Examiners ("NBOME"). Bahl successfully completed his coursework at NYIT with only minor difficulties, including an initial failed attempt at the first level of the COMLEX exams and a surgery rotation that was interrupted by a 1.5-month

2

medical withdrawal. He later passed the first COMLEX exam and finished his rotation so that he was on track to graduate in December 2012. But Bahl struggled to pass the second level of the COMLEX exams. The second level included both a Cognitive Evaluation ("CE") and a Performance Evaluation ("PE").

Bahl repeatedly delayed the administration of his PE and CE exams, narrowing the window of time that would allow him to pass the exams before graduation. In July 2012, the assistant dean of the medical school contacted Bahl to express her concern that he was scheduled to take his PE exam in January 2013, which was after his scheduled graduation date. She wrote again on December 3, requesting that Bahl contact her about taking a leave of absence to study for the PE and CE exams, which he still had not passed. Bahl took and failed the PE and CE exams in December 2012 and agreed to go on a six-month leave of absence to study.

In May 2013, Bahl requested extra time on his CE exam from the NBOME, citing a recommendation from Dr. Paul Yellin, a learning specialist. Bahl had seen Yellin in August 2011—at which point Yellin recommended that Bahl receive extra time on his exams—but Bahl did not request an accommodation until May 2013. In June, he made the same request for the PE exam. While his requests were pending with the NBOME, Bahl asked NYIT to enroll him in a ten-week directed study course that would give him more time to complete the COMLEX exams.

The NBOME denied Bahl's request for extra time on the CE exam. Bahl's treating physician, Dr. Adler, then requested that NYIT grant a six-month medical leave to treat Bahl's ADHD and other mental health conditions. On August 28, 2013, Bahl's then-attorney reiterated the request for a six-month medical leave, which would allow Bahl to take the COMLEX exam in February 2014. In September, NYIT informed Bahl that he was ineligible for medical leave because he was not an active student. That same month, Bahl took and failed the CE and PE exams without an accommodation; he failed the CE exam by a larger margin than he did in his first attempt.

After learning that he was ineligible for medical leave from NYIT, Bahl hired a new attorney, William Goren. Goren sent NYIT an "ADA Grievance" on September 24, 2013, that sought reconsideration of Bahl's request for medical leave. On October 20, 2013, NYIT's counsel wrote to Goren proposing that Bahl could instead effectively take a leave of absence by withdrawing for financial aid purposes with the opportunity for reinstatement and retaking the COMLEX exams. NYIT said it would provide that accommodation provided that Bahl receive extra time from the NBOME and could report the exam results by January 31, 2014. Ten days later, after NYIT prompted a response, Goren relayed that Bahl "is moving with all due speed to take the test(s) as soon as he can provid[ed] he gets the reasonable accommodations he is entitled to." J. App'x 1302. "[I]n addition to moving forward on the test(s)," Bahl was also "considering any and all other options that may be available to him now that the internal grievance procedure has been exhausted." *Id*.

NYIT did not hear again from Bahl until January 29, 2014, two days before the January 31 deadline. Goren wrote that Bahl had filed a claim with the Office of Civil Rights at the U.S. Department of Education. Two days later, NYIT's counsel responded that NYIT was open to reconsidering its planned dismissal of Bahl and inquired about Bahl's attempts to seek an accommodation from the NBOME.

At this point, Goren ceased representing Bahl because Bahl wanted to take a "very very aggressive" litigation stance. *Id.* at 207. A new attorney contacted NYIT with a request for education records. NYIT responded to that request by asking whether Bahl had made progress in seeking accommodations from the NBOME, and it notified him that NYIT "has not taken any action as to [Bahl's] status" since October 2013. *Id.* at 1675. In response, Bahl's new attorney stated that he would "review this issue with Mr. Bahl and get back to you as soon as practicable." *Id.* After that email in February 2014, Bahl ceased communicating with NYIT until he filed suit in June 2014.

## II

The district court held a five-day jury trial on Bahl's failure-to-accommodate claims under the Rehabilitation Act and the New York State Human Rights Law.[1] Bahl argued that the accommodation NYIT proposed in October 2013—including the condition that Bahl report his exam score by January 31, 2014—was unreasonable because the NBOME rules barred a student from taking a PE exam more than three times within 365 days. The rule would not allow Bahl to take the PE exam again until December 27, 2013, but that timing would prevent his results from being reported by the end of January because the NBOME also indicated that it could take eight to ten weeks to report exam results. As a consequence, Bahl contended that the deadline NYIT proposed could not be met. NYIT argued that its proposal was reasonable given Bahl's history of accommodations and that, in any event, Bahl could not establish that NYIT acted unreasonably when he himself ended the interactive process of negotiating an accommodation.

The jury determined that Bahl was a qualified individual with a disability under the relevant laws but that NYIT did not fail to provide a reasonable accommodation. Following that decision, Bahl moved for judgment as a matter of law and a new trial. He reiterated that NYIT's proposed accommodation was per se unreasonable and added three evidentiary arguments relevant to this appeal. According to Bahl, the district court erred by (1) admitting evidence of Bahl's marijuana use during medical school, (2) excluding testimony from two other students who alleged that NYIT had discriminated against them based on their mental health conditions, and (3) rejecting Bahl's proposed answer to a jury note asking for evidence of his response to NYIT's February 2014 email.

---

[1] Bahl's counsel withdrew other claims at summary judgment. *See Bahl v. New York Coll. of Osteopathic Med. of New York Inst. of Tech.*, No. 14-CV-4020, 2024 WL 866137 (E.D.N.Y. Feb. 28, 2024).

The district court denied the motion for judgment as a matter of law or a new trial. The district court explained that the jury could consider NYIT's proposal in the broader context of its relationship with Bahl and that it also could have denied Bahl's claim because he was responsible for the breakdown in the interactive process. The district court also rejected Bahl's three evidentiary claims. First, the district court said that the evidence of marijuana use was relevant to Bahl's treatment and credibility. Second, it explained that the evidence regarding other students was of limited probative value and its admission could have invited mini-trials about the reasons those students left NYIT. Third, it said that the exhibit that Bahl proposed to provide to the jury was not responsive to the jury's note because, among other things, it was "never the subject of testimony during the trial." *Bahl v. New York Inst. of Tech.*, No. 14-CV-4020, 2024 WL 3893469, at *13 (E.D.N.Y. Aug. 20, 2024).

Bahl timely appealed. He raises these issues as well as a claim that the district court wrongly denied his motion in 2015 to amend his complaint to seek injunctive relief.

### III

"We review a district court's denial of a Rule 50 motion for judgment as a matter of law *de novo.*" *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 54 (2d Cir. 2019). "Judgment as a matter of law may be granted following a jury verdict 'only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been *compelled* to accept the view of the moving party.'" *Id.* (quoting *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 180 (2d Cir. 2016)).

"We review a district court's denial of a Rule 59 motion for a new trial for abuse of discretion, viewing the evidence 'in the light most favorable to the nonmoving party.'" *Id.* (quoting *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018)). "We will reverse a judgment only if the district court (1) based its decision on an error

6

of law, (2) made a clearly erroneous factual finding, or (3) otherwise rendered a decision that cannot be located within the range of permissible decisions." *Id.* (alteration omitted) (quoting *Ali*, 891 F.3d at 64).

**A**

We agree with the district court that Bahl was not entitled to judgment as a matter of law on the reasonableness of NYIT's proposed accommodation. A court will analyze failure-to-accommodate claims under the Rehabilitation Act and the New York State Human Rights Law under the same standard and consider the claims together. *See Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 311-12 (2d Cir. 2020); *see also Nordenstam v. State Univ. of New York Coll. of Env't Sci. & Forestry*, 184 A.D.3d 1157, 1158 (4th Dep't 2020). Both laws follow the burden-shifting framework of the Americans with Disabilities Act. *See Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023). To establish a prima facie claim, a plaintiff must show that (1) he is a qualified individual with a disability, (2) the defendant receives federal funding, and (3) he was denied the opportunity to participate in the defendant's program by reason of his disability. *See Dean v. Univ. at Buffalo Sch. of Med. and Biomed. Scis.*, 804 F.3d 178, 187 (2d Cir. 2015). The parties do not dispute the first two elements in this appeal.

"In the education context," the third element "require[s] a covered institution to offer reasonable accommodations for a student's known disability unless the accommodation would impose an 'undue hardship' on the operation of its program." *Id.* at 186-87 (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88 (2d Cir. 2004)). The statutory framework "envisions an 'interactive process'" by which the institution and the student will "work together to assess whether [the student's] disability can be reasonably accommodated." *Tafolla*, 80 F.4th at 122 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 99 (2d Cir. 2009)). "Thus, we have recognized that, where a 'breakdown in interactive process was manifestly [the student's] fault,' a failure-to-accommodate claim 'might be deemed frivolous.'" *Id.* (alteration omitted) (quoting *Parker v. Sony Pictures Ent.*,

*Inc.*, 260 F.3d 100, 114 (2d Cir. 2001)); *see also Nugent v. St. Lukes Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008).

Whether NYIT's proposed accommodation was reasonable was appropriately submitted to the jury for two reasons. First, the jury could have found that Bahl was responsible for the breakdown in the interactive process. Bahl's attorney at the time of the proposed accommodation testified that his representation ended because Bahl "really wanted to move away from the administrative process" and instead to adopt a "very aggressive" approach to "litigation." J. App'x 206-07. A rational jury could have found that NYIT sought to continue the interactive process to reach an accommodation but Bahl ended it. After the deadline to submit his test results on January 31, 2014, NYIT took the "opportunity to reach out to [Bahl's new lawyer] and see if [he] had any additional information regarding [Bahl's] taking of the COMLEX II exams" and "advised that NYIT[] has not taken any action as to [Bahl's] status" as a temporarily withdrawn student. *Id.* at 1675. Bahl's new lawyer never answered. If the jury credited that account, it would be a rational basis for concluding that Bahl could not succeed on his claims. *See Tafolla*, 80 F.4th at 125 (concluding that "a rational jury could indeed find that [the plaintiff] was at fault for the breakdown of the interactive process" when the evidence suggested that the plaintiff did not respond to the proposed accommodation).

Second, the jury could have concluded that NYIT's proposed accommodation was reasonable given what NYIT knew at the time. Bahl identifies no record evidence showing that he told NYIT that its proposed schedule for the PE exam was unworkable. A student "seeking an accommodation is required to participate in this interactive process in order to help the [institution] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* at 122 (internal quotation marks omitted). A rational jury could have decided that while Bahl explained why he wanted extra time for the test to justify a medical leave, he never

8

explained that the NBOME's testing rules required that his leave extend through February. Even if—as Bahl argues—the district court was wrong to suggest that a history of prior accommodations could make the latest accommodation reasonable, the broader context of the proposed accommodation remains relevant. In particular, the jury may have considered the proposed accommodation reasonable in relation to Bahl's request.

## B

We agree with the district court that the purported trial errors do not warrant relief under Rule 59. "We review a district court's evidentiary decisions for abuse of discretion." *United States v. Rainford*, 110 F.4th 455, 471 (2d Cir. 2024).

First, Bahl argues that the district court should not have admitted evidence of his use of marijuana because it risked unfair prejudice. The district court did not abuse its discretion because the evidence was relevant, and its relevance was not outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. At trial, NYIT challenged the first element of Bahl's claim—whether he had a qualifying disability—and Dr. Yellin, Bahl's physician, testified that had he known about Bahl's use of marijuana, he would "question whether or not I was seeing ADHD or symptoms secondary to the marijuana." J. App'x 165. That would mean that Bahl's challenges might not have resulted from a disability that NYIT needed to accommodate—a possibility certainly relevant to the questions before the jury. *Cf. Singh v. George Washington Univ. Sch. of Med. and Health Scis.*, 667 F.3d 1, 6 (D.C. Cir. 2011) (noting that "causal factors" for academic performance such as "extracurricular involvements and poor study habits" meant that a plaintiff "failed to meet her burden to demonstrate that her impairment caused her limitation on learning"). Given the relevance of the evidence, the district court did not abuse its discretion by admitting it.

Second, Bahl argues that the district court should have allowed the testimony of two witnesses who claim that NYIT discriminated against them

based on their mental health. If the witnesses' claims were substantiated, the testimony would have arguably helped to establish that NYIT acted intentionally, which would be relevant to the issue of damages under the Rehabilitation Act. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) ("[M]onetary damages are recoverable only upon a showing of an *intentional* violation."). Nevertheless, the district court reasonably excluded the testimony. The circumstances under which the two witnesses left NYIT are disputed, and the testimony might have necessitated two mini-trials that would have confused the jury. We have explained that "we are wary of allowing a trier of fact to draw inferences of intent from the outcome of prior lawsuits in an area so fraught with uncertainty and doubt" and that evidence based on such cases would be unduly prejudicial when it "would have resulted in a mini-trial." *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1372-73 (2d Cir. 1988) (internal quotation marks omitted).

Moreover, Bahl cannot show prejudice from the exclusion. If the jury determined that Bahl terminated the interactive process, the intention of NYIT would not be at issue. An evidentiary error warrants a new trial only if it was "so clearly prejudicial to the outcome of the trial that we are convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Nimely v. City of New York*, 414 F.3d 381, 399 (2d Cir. 2005) (quoting *Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir. 1997)). We cannot reach that conclusion here.

Third, Bahl argues that the district court erroneously responded to a note from the jury. The note read as follows: "After the school's terms of accommodation email (2/20/2014 from Mr. Thompson) to Plaintiff's attorneys, is there any formal evidence on the record of a reply from Plaintiff or his attorneys? If so, can we see it?" J. App'x 1763. In response to the note, Bahl proposed that the jury receive Defense Exhibit JJJ and Plaintiff's Exhibit 56. Defense Exhibit JJJ is Goren's short letter dated January 29, 2014, informing NYIT that he had filed a

10

claim with the Office of Civil Rights. Plaintiff's Exhibit 56 is a cover letter from the Office of Civil Rights to NYIT—dated March 28, 2014—that included attachments related to Bahl's claim against NYIT. District courts "enjoy considerable discretion in construing the scope of a jury inquiry and in framing a response tailored to the inquiry." *United States v. Khalupsky*, 5 F.4th 279, 295 (2d Cir. 2021) (alteration omitted) (quoting *United States v. Rommy*, 506 F.3d 108, 126 (2d Cir. 2007)). The district court did not abuse its discretion here. The district court understood the jury to be requesting a document it had seen during the trial. But they had not seen Exhibit 56. Moreover, neither Exhibit JJJ nor Exhibit 56 would qualify as responsive in any event because neither exhibit contains communications from Bahl or his attorneys dated later than February 20, 2014.

## C

Bahl additionally challenges the denial of his motion to amend his complaint in 2015 to add a claim for injunctive relief. We have appellate jurisdiction over this claim because the denial of a motion to amend the complaint merges into the final judgment. *See* Fed R. App. P. 3(c)(4); *see also SongByrd, Inc. v. Estate of Grossman,* 206 F.3d 172, 178 (2d Cir. 2000). But any error in denying leave to amend would be harmless. To establish an entitlement to a permanent injunction, a plaintiff must succeed on the merits. *See New York Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). Because the jury concluded that NYIT did not fail to offer Bahl a reasonable accommodation, his claims failed on the merits. Accordingly, Bahl cannot show that he suffered prejudice from the denial of leave to include a claim for injunctive relief.

*      *      *

We have considered Bahl's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court